UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAMIEN SHONTELL HEWLETT,

        Plaintiff,

        v.                                    Case No. 24-C-377

JUSTIN L. THOMSEN,
BRANDON FISCHER,
TANNER LEOPOLE,
LOGAN GOEHL,
BRIDGETTE PROSPER,
JOHN DOES,
YANA PUSICH,
RANDALL HEPP, and
B. KOLB,

        Defendants.

---

## SCREENING ORDER

---

    Plaintiff Damien Shontell Hewlett, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Hewlett's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

    Hewlett has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Hewlett has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial

partial filing fee of $141.38. Hewlett's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Hewlett, on November 5, 2023, he was tethered to a strip cage cell door in the restrictive housing unit. Hewlett asserts that he was not threatening to hurt himself or anyone else. He explains that he was respectfully informing staff that Defendant Officer Justin Thomsen was lying about him by saying he was suicidal. Hewlett asserts that he told staff he was not suicidal and did not think he should be placed on observation status. According to Hewlett, Thomsen assembled a suit-up team consisting of himself, Sergeant Leopole, Officer Prosper, Officer Goehl, two John Doe officers, and Lieutenant Fischer, with Officer Prosper videotaping the interaction. Hewlett states that he told the team that he was willing "to strip out" but first he wanted to discuss how Thomsen lying about him violated institution policy. Hewlett asserts that Thomsen must not have liked that because, in response, he sprayed Hewlett in the face with OC spray. Hewlett asked Thomsen why he sprayed him and informed him that doing so constituted excessive force. In response to Hewlett's feedback, Thomsen allegedly sprayed him again. Dkt. No. 1 at 2.

Hewlett explains that after being sprayed, he was disoriented and could not see. He states that officers opened the door, but he needed help standing because he has a bad back and knee. According to Hewlett, instead of helping him stand, Thomsen tased him in the back, stating "you can stand up." Hewlett then was escorted out of the cell and down some stairs. He states that his muscles felt like jello after being tased, and he fell and hit his back pretty hard. He asserts that officers then took him to the showers, where they placed his head in and out of water for seconds at a time while he was handcuffed, but they would not allow him to wash off the OC spray with soap. Hewlett explains that the water intensified the effect of the OC spray. *Id.* at 2-5.

3

According to Hewlett, he was then taken back upstairs to the strip cage. Hewlett informed officers he was willing to strip, but Thomsen told him they were going to do a staff-assisted strip search. Hewlett asserts that he asked that Prosper, who was videotaping the interaction, leave because it violated his rights under the Prison Rape Elimination Act to have a female present. Hewlett asserts that his clothes were cut off as he was held on his knees and cuffed behind his back. He states that his penis was fondled and his buttocks were groped, all in front of a female officer. Hewlett insists this was all unnecessary because he had twice informed staff that he was willing to strip. According to Hewlett, Fischer is the restrictive housing supervisor, and he did not intervene to stop Thomsen from using unnecessary force or from conducting an unauthorized staff-assisted strip search. *Id.* at 5-6.

### THE COURT'S ANALYSIS

"[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The "central question" when evaluating whether force used against a prisoner is excessive is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Fillmore v. Page*, 358 F.3d 496, 503 (7th Cir. 2004) (quoting *Hudson*, 503 U.S. at 6). Hewlett asserts that Thomsen sprayed him with OC spray twice even though he was not threatening staff or himself and only wanted to discuss his placement in observation status before stripping as ordered. He also asserts that Thomsen tased him when he was unable to comply with officers' orders to stand up. Of course, prisoners are not at liberty to decide which rules and orders they will comply with and when they will comply with them. They "are and must be required to obey orders." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009) (citations omitted). Allowing

4

prisoners to assert their authority over staff or passively delay obeying orders could place staff and others in danger. Still, Hewlett asserts that Thomsen unnecessarily escalated the situation by twice spraying him and tasing him, apparently without warning. At this early stage, these allegations are sufficient for him to proceed on an excessive force claim.

Hewlett does not, however, state a claim against the other members of the suit-up team based on allegations that they failed to stop Thomsen from spraying and tasing him. As noted, Hewlett suggests that Thomsen acted abruptly without warning or justification. To be liable for failing to intervene in a constitutional violation, an individual must have had a realistic opportunity to prevent the alleged violation. *See Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017). In light of Hewlett's description of how the incident unfolded, the Court cannot reasonably infer that the other members of the suit-up team could have anticipated and/or prevented Thomsen's alleged misconduct.

Next, the Court will allow Hewlett to proceed on a deliberate indifference claim against the members of the suit-up team (Thomsen, Leopole, Prosper, Goehl, the two John Doe officers,[1] and Fischer) based on allegations that, despite him telling them that the OC spray continued to burn his eyes and face and that water alone was intensifying the burning, they refused to allow him to use soap to wash off the spray. *See Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) ("To state a claim premised on prison officials' failure to protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994))). Development of the record may reveal

---

[1] After the Court enters a scheduling order, Hewlett will have to use discovery to learn the John Doe officers' names.

that concerns about security and/or safety required delaying Hewlett's access to a full shower with soap, but at this stage, his allegations are sufficient for him to proceed.

With regard to the staff-assisted strip search, the Seventh Circuit has acknowledged that "[t]here is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). By way of example, the appellate court emphasized that "the strip search of a male prisoner in front of female officers, if conducted for a legitimate penological purpose, would fail to rise to the level of an Eighth Amendment violation." *Id.* It further noted that, to state a claim, a plaintiff must allege that the strip search in question was not merely a legitimate search conducted in the presence of a female officer but that the search was conducted in a harassing manner intended to humiliate and inflict psychological pain. *Id.*

With this standard in mind, Hewlett fails to state a claim against Prosper and the other members of the suit-up team based on allegations that they ignored his requests that Prosper, who is female, not be present during the strip search. According to Hewlett, Prosper had been videotaping his interactions with the officers from the beginning. She was therefore present for a valid penological purpose, and nothing suggests that her continued participation was intended to humiliate or inflict psychological pain on Hewlett. Hewlett insists that her presence violated his rights under the Prison Rape Elimination Act, but nothing in that Act suggests that it was intended to create a private cause of action. *Biese v. Foster*, No. 16-cv-359, 2016 WL 1706159, at *3 (E.D. Wis. Apr. 28, 2016). "[W]here the text and structure of a statute provides no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under

6

§ 1983 or under an implied right of action." *Id.* (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002)).

Whether Hewlett states a claim based on allegations that Thomsen ordered a staff-assisted strip search after Hewlett made clear he was willing to voluntarily strip is a close call. Obviously, having officers forcibly remove an inmate's clothes and handle his genitals is more intrusive than having officers observe an inmate remove his own clothes and handle his own genitals. According to Hewlett, there was no justification for ordering the more intrusive search given his willingness to comply with orders to strip. He implies that Thomsen ordered the more intrusive search only to further harass and demean him. A fully developed record may reveal otherwise, but for now, Hewlett may proceed on an Eighth Amendment claim against Thomsen based on these allegations. He may also proceed on a claim against Fischer based on allegations that, as Thomsen's supervisor, he had the authority to intervene and order the less intrusive search. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (holding that a supervisor will be held liable for a subordinate's misconduct only if the supervisor directs or consents to the misconduct). Nothing in the complaint suggests that the other officers in the suit-up team had the authority to challenge or override Thomsen's assessment that a staff-assisted strip search was required, nor can the Court reasonably infer from Hewlett's description of the search that they conducted the search in a constitutionally problematic manner, so Hewlett does not state a claim against them.

Hewlett also does not state claims against Yana Pusich, Randall Hepp, or B. Kolb. Although Hewlett names them in the caption of his complaint, he does not include any allegations about what they did or did not do to violate his rights, so he fails to provide notice of a claim as required by Federal Rule of Civil Procedure 8. The Court reminds Hewlett that, to the extent these individuals were involved in reviewing his inmate complaints about this incident, it has long been

established that "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation," so there is no liability on that basis. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). And, finally, the Court declines Hewlett's request that it "hold jurisdiction over the state of WI-Notice of Injury and claim pursuant to Wis. Stat. Section 893.82." Dkt. No. 1 at 7. Hewlett does not specify the state law claims he wishes to pursue, so the Court cannot determine whether supplemental jurisdiction is appropriate.

One final note: Hewlett asserts that there is extensive video footage of this incident, including handheld video, hallway video, and bodycam video. The Court encourages Defendants to promptly provide this video footage to Hewlett, so he can evaluate whether his version of what happened is consistent with what actually happened. Further, if the video footage conclusively disproves Hewlett's allegations, the Court invites Defendants to file a summary judgment motion at their earliest convenience. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on summary judgment."). It is a waste of the parties' and Court's time and resources to delay resolution of this case if conclusive video footage exists. In the event the video footage does not resolve all of Hewlett's claims, the Court would allow additional discovery on the surviving claims as well as a second round of dispositive motions on the merits of those surviving claims, if appropriate.

**IT IS THEREFORE ORDERED** that Hewlett's motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Yana Pusich, Randall Hepp, and B. Kolb are **DISMISSED** from this action because Hewlett fails to state a claim against them.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Hewlett's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Justin L. Thomsen, Brandon Fischer, Tanner Leopole, Logan Goehl, and Bridgette Prosper.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Justin L. Thomsen, Brandon Fischer, Tanner Leopole, Logan Goehl, and Bridgette Prosper shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of Hewlett shall collect from his institution trust account the $208.62 balance of the filing fee by collecting monthly payments from Hewlett's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Hewlett is transferred to another institution, the transferring institution shall forward a copy of this Order along with Hewlett's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Hewlett is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable William C. Griesbach
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Hewlett is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin this 1st day of May, 2024.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge