IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DAMIEN HEWLETT,

    Plaintiff,

    v.                         Case No. 24CV0377

JUSTIN THOMSEN, BRANDON FISCHER,
TANNER LEOPOLD, LOGAN GOEHL,
AND BRIDGETT PROSPER,

    Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON EXHAUSTION GROUNDS

## Introduction

Plaintiff Damien Hewlett, an inmate at Waupun Correctional Institution, proceeds on claims of excessive force and deliberate indifference against prison staff who gave him a decontamination shower and conducted a staff-assisted strip, and against the unit supervisor for failing to intervene. (Dkt. 7:5-7.) Hewlett alleges that, on November 5, 2023, he was not given a proper decontamination shower, and that Lieutenant Thomsen, Sargeant Leopold, Officer Goehl and Officer Prosper conducted an unnecessary staff-assisted strip search during which time his clothes were forcefully removed after which officers groped his buttocks and fondled his penis. (Dkt. 7:3-4.) Hewlett further alleges that Lieutenant Fischer, unit supervisor, was present on the scene and failed to intervene. (Dkt. 1:2.)

However, Hewlett never filed an inmate complaint against Lieutenant Fischer for failing to intervene. In fact, Lieutenant Fischer arrived on unit after the strip search had already occurred and inmate Hewlett was already placed in observation. Hewlett made no complaint against Lieutenant Fisher at the time. Nor did Hewlett file an inmate complaint regarding his decontamination shower.

As a result, for failure to exhaust his administrative remedies as required by § 1997(e), the Court should dismiss the claim that the defendants failed to give Hewlett a proper decontamination shower, dismiss the supervisory claims against Brandon Fischer, and dismiss Brandon Fischer from the case.

## Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022). Parties genuinely dispute a material fact where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (internal quotations omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A party who fails to produce evidence sufficient to establish an element essential to that party's case on which they bear the burden of proof cannot survive a summary judgment challenge. *Id.* (citing *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018)).

## Statement of Facts

On November 5, 2023, Hewlett was placed in observation status by Dr. Meidema in the Psychological Services Unit (PSU) for stating that he was suicidal and homicidal. (DPFOF ¶ 3.) Inmates who are transferring locations within the institution, including being placed in the Restrictive Housing Unit (RHU) and/or in observation status, are subject to being strip searched. (DPFOF ¶ 4.) Hewlett refused to comply with the required strip search and was therefore subjected to a staff-assisted strip search. (DPFOF ¶ 5.)

A team consisting of Lieutenant Thomsen, Sergeant Leopold, Correctional Officer Bah, Correctional Officer II Goehl, Correctional Officer Zuhlke, and Correctional Officer Prosper on camera was assembled to conduct the staff-assisted strip search. (DPFOF ¶ 6.) During the cell extraction, Hewlett's continued non-compliance resulted in Lieutenant Thomsen using OC spray and a taser to gain compliance. DPFOF ¶ 7.) Plaintiff was subsequently given a decontamination shower, strip searched, and evaluated by a Health Services Unit nurse before being placed in observation. (DPFOF ¶ 8.)

Lieutenant Brandon Fisher arrived in the RHU after the strip search was completed to conduct observation rounds, and Hewlett was already placed in an observation cell by that time. (DPFOF ¶ 9.) Fisher noted in his report that inmate Hewlett had been placed in observation status within the last half hour. (DPFOF ¶ 10.) According to the report, Lieutenant Thomsen had concluded the cell extraction and placement of Hewlett at 5:30 p.m. (DPFOF ¶ 11.) Fisher arrived in RHU at approximately 5:35 p.m. and began conducting observation checks (DPFOF ¶ 12.)

On November 20, 2023, Hewlett filed inmate complaint WCI-2023-17330

asserting that Lieutenant Justin Thomsen had used excessive force in conducting the strip search. DPFOF ¶ 13.) Hewlett did not file any complaint stating that he did not receive a proper decontamination shower. DPFOF ¶ 14.) Nor did Hewlett file any complaint against Lieutenant Fisher for failure to intervene. DPFOF ¶ 15.) Even in his excessive force complaint, Hewlett did not state that the supervisor was present and failed to intervene. DPFOF ¶ 16.) The complaint for excessive force was dismissed after ICE viewed the video footage, found no evidence of excessive force, and determined that Hewlett had refused to comply with staff directives and staff used the least force necessary to gain compliance. (DPFOF ¶ 17.)

## Argument

**I. This case must be dismissed because Hewlett failed to exhaust his administrative remedies.**

    **A. Inmates must exhaust administrative remedies before filing 42 U.S.C. § 1983 lawsuits.**

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust their available administrative remedies before bringing a 42 U.S.C. § 1983 action with respect to prison conditions. *Ross v. Blake*, 578 U.S. 632, 638 (2016). The relevant section of the PLRA, 42 U.S.C. 1997e(a), reads as follows:

> **Applicability of administrative remedies**. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a). PLRA "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

42 U.S.C. § 1997e(a).

To "exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Lockett v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted).

Inmates must properly exhaust their administrative remedies by complying with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 584 U.S. 81, 90-93 (2006). This means an inmate must "properly" pursue "each step within the administrative process" "so that the agency addresses the issues on the merits." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). The steps an inmate must follow are established by state law. *Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018) ("State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA."). These requirements are "interpreted strictly," meaning "a prisoner must comply with the specific procedures and deadlines established by the prison's policy." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citation omitted).

There are several important policy considerations behind the PLRA exhaustion rule. Administrative exhaustion restricts frivolous claims, gives prison officials the opportunity to address a situation internally, develops the factual record, and reduces the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450-51 (7th Cir. 2001). "The statute embodies a firm congressional will that keeps with a bedrock principle of our jurisprudence: 'Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional

security.'" *McCoy v. Gilbert*, 270 F.3d 503, 509-10 (7th Cir. 2001) (quoting *Thomas v. Ramos*, 130 F.3d 754, 759 (7th Cir. 1997)).

"Failure to exhaust 'is an affirmative defense, and the burden of proof is on the defendant[ ].'" *Lockett*, 937 F.3d at 1025 (citation omitted). Accordingly, the defendant must "show [the inmate's] failure to exhaust." *Williams v. Ortiz*, 937 F.3d 936, 941 (7th Cir. 2019). If the defendant meets this burden, a district court must dismiss the case. *Ross*, 578 U.S. at 639 ("[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion.").

The PLRA does not specify what a prisoner must do to exhaust his administrative remedies. *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). Those requirements are found in the law establishing the relevant administrative remedies: state law for state prisons and federal law for federal prisons. *Id.* (citing *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)).

Wisconsin Administrative Code requires prisoners to "clearly identify the issue" in their offender complaints. Wis. Admin. Code DOC § 310.07. Section 5 provides:

**(5)** Each complaint may contain only one clearly identified issue.

Wis. Admin. Code DOC § 310.07(5).

In *Schillinger*, a Wisconsin inmate who was brutally assaulted by another inmate sued three prison guards for failure to protect him. *Schillinger v. Kiley*, 954 F.3d 990, 991 (7th Cir. 2020). The district court screened the complaint and allowed the inmate to proceed on his failure to protect claim. *Id.* The judge later ruled that

6

Case 1:24-cv-00377-WCG   Filed 08/09/24   Page 6 of 10   Document 27

the prisoner had failed to exhaust his administrative remedies on the claim and entered summary judgment for the defendants. *Id.* at 991-92. The inmate appealed but the 7th Circuit affirmed finding that although the inmate pursued an inmate complaint through all levels of the inmate complaint system, the prisoner never mentioned the failure to protect claim in his inmate complaint. *Id.* at 992.

Specifically, the court noted the inmate complaint failed to clearly identify the failure to protect claim and focused entirely on the absence of correctional officers on the range where the attack occurred. *Id.* at 995. The Court further noted the defendants were not mentioned in the inmate complaint, nor was any reference to an unnamed sergeant made, and there were no allegations that the defendants had reason to know in advance that an attack might occur and failed to take measures to prevent it. *Id.* at 996. The Court found that the inmate complaint focused on an entirely different problem. *Id.* The Court stated, "This did not give the prison notice of the claim at issue here, which concerns events preceding the attack and conduct by officers who were not mentioned in the grievance." *Id.* Thus, the Court held that the inmate failed to exhaust his administrative remedies on the failure to protect claim. *Id.*

Additionally, Wisconsin Administrative Code requires prisoners to "attempt to resolve the issue before submitting an inmate complaint. Wis. Admin. Code DOC § 310.07. Section 1 provides:

> (1) Prior to filing a formal complaint, an inmate shall attempt to resolve the issue by following the designated process specific to the subject of the complaint. The ICE may request inmates to provide evidence of having followed the specified process.

7

Wis. Admin. Code DOC § 310.07(1).

## B. Inmate Complaint WCI-2023-17330

On November 20, 2023, Hewlett filed inmate complaint WCI-2023-17330 wherein he alleged that, on November 5, 2023, Lieutenant Justin Thomsen used excessive force against him during the strip search by using OC spray and tasing him. In the complaint, Hewlett states his one issue for this complaint as follows: "Lt. Thomsen using excessive force on me."

Hewlett then describes the incident as follows:

> I was in RHU strip cell #3 and was ready to strip out, but then Lt. Grippentrog had told me that I would have to go on OBS because Lt. Thomsen had told him I said I was suicidal. I told Grippentrog I had "never" said that I was suicidal. And Grippentrog had looked into it, and found out through Sgt. Leopold that he never heard me say I was suicidal during any of my interactions with Lt. Thomsen. But Lt. Thomsen said he was still putting me on OBS. I told him I wasn't going to change out and go on OBS because I didn't say I was suicidal. A suit up team was assembled and it consisted of Lt. Thomsen, CO Goehl, Sgt. Leopold, unknown CO, unknown CO, and CO Prosper as video documentation. When the suit up team came to the strip cage, I was already tethered to the strip cage door, and had let it be known that I wasn't aggressive, not hurting myself, or anyone else, and was fully willing to strip out, but had first wanted to discuss the Executive Directive #3 work rules that was being broken. Lt. Thomsen said he was taking it as I was refusing, and sprayed me in the face with OC spray as I was talking without even warning me that he was going to deploy the OC spray. It caused me great burning pain and I asked him why he sprayed me and had told him that what he had done was excessive force and violated governor tony Evers' Executive order #111 for excessive force. As I was voicing this Lt. Thomsen had sprayed me a second time with the OC spray in my face. I then crouched down while still tethered to strip cage and staff opened strip cage door. I put up no fight and was on my knees tethered to the strip cage at this point, and I got a bad knee and back injury so I asked staff to help me to my feet, but instead I was tased in my back by Lt. Thomsen. I was nonaggressive, not hurting myself, or anybody else, and was already secured to a strip cage with a tether, and so Lt. Thomsen's actions were a criminal act of assault

> against me. Numerous body worn cameras and a handheld digital camera were active during this incident.

Ex. 1002, pp. 11-13.

In his complaint, when asked with whom did he attempt to resolve his one issue, Hewlett states that he spoke with RHU supervisor Lieutenant Brandon Fisher who allegedly told Hewlett things would have ended differently had he conducted the cell entry. Thus, Lieutenant Fisher was the person Hewlett later spoke to after the fact to try and resolve the issue, and not the person about whom Hewlett had a complaint. (Ex. 1002, p. 11.)

Contrary to the allegation in his federal complaint that "Lieutenant Fisher was there on scene and present as well as the acting RHU supervisor" (dkt. 1:2), Hewlett did not assert in any inmate complaint that Lieutenant Fisher was present on scene at the time of the strip search. Nor did Hewlett assert in any inmate complaint that Lieutenant Fisher failed to supervise or should have intervened. Nor did Hewlett make any reference whatsoever in any inmate complaint to a lack of supervision or the failure of any supervisor, named or unnamed, to intervene with respect to the strip search.

Likewise, Hewlett failed to mention in any inmate complaint his claim that he did not receive a proper decontamination shower. Neither did Hewlett mention Lieutenant Brandon Fisher or the decontamination shower in his appeal. Hewlett focused his inmate complaint on allegations of excessive force by Justin Thomsen. Thus, Hewlett's claims that he did not receive a proper decontamination shower and

9

Case 1:24-cv-00377-WCG   Filed 08/09/24   Page 9 of 10   Document 27

that Lieutenant Fisher was present during the strip search and failed to intervene have not been administratively exhausted, and should therefore be dismissed.

## Conclusion

For the reasons stated above, based on failure to exhaust his administrative remedies, the Court should dismiss Plaintiff's claim that the defendants failed to give Hewlett a proper decontamination shower, dismiss the supervisory claims against Lieutenant Brandon Fischer, and dismiss Brandon Fischer from the case.

Dated August 9, 2024.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Mmeli Obi
MMELI OBI
Assistant Attorney General
State Bar #1121108

BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-1080 (Obi)
(608) 266-1780 (Flugaur)
(608) 294-2907 (Fax)
obim@doj.state.wi.us
flugaurbt@doj.state.wi.us