RECEIVED
AUG 19 2024
By_____

**DEPARTMENT OF CORRECTIONS**
Division of Adult Institutions
DOC-0643 (Rev. 8/2022)

**WISCONSIN**

"Carbon Copied"

## INTERVIEW/INFORMATION REQUEST
### SOLICITUD PARA INFORMACION / ENTREVISTA

Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.
*Instrucciones para Reclusos: No utilice este formulario para comunicarse con el personal de cuidados de salud. Utilice una solicitud de servicio de cuidados de salud, dentales o psicológicos.*

| OFFENDER NAME *NOMBRE DEL/LA OFENSOR(A)* | DOC NUMBER *NUMERO DEL/LA OFENSOR(A)* | LIVING UNIT *UNIDAD DE VIVIENDA* |
|---|---|---|
| Damien Hewlett | 559455 | SCH - F - 8 |

| DATE *FECHA* | WORK ASSIGNMENT *ASIGNACION DE TRABAJO* |
|---|---|
| 8 - 8 - 24 | IN |

☐ Interview *Entrevista*  ☒ Information *Informacion*

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
*INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*

Please E·file Plaintiff's first set of interrogatories to the U.S.D.C.-E.D.-WI, for case of Hewlett v. Thomsen- Case No. 24 - CV- 377. Thank you, it's appreciated.

---

(Do Not Write Below This Line) *(No Escriba Debajo Esta Linea)*
### DISPOSITION OF REQUEST *DISPOSICION DE LA SOLICITUD*

☐ You Will Be Interviewed
  *Usted sera entrevistado*

Date: *Fecha:* _____  Time: *Hora:* _____

☐ Information to Follow
  *Informacion Sera Proveida*

☐ Request Referred To:
  *Solicitud Referida A:* _____

Information/Comment:
*Informacion/Comentario:* _____

_____
Signed *Firmado*

_____
Department *Departamento*

IN UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

Damien Shontell Hewlett

V.                                    24-CV-377

Justin L. Thomsen et. al.

PLAINTIFF'S FIRST SET OF INTERROGATARIES

I, Damien Shontell Hewlett, am serving the following
Defendant's: Justin Thomsen, Brandon Fischer, Tanner
Leopde, the following enclosed Interrogatories
pursuant Federal Rule Of Civil Procedure 33, of
which they'll have 60-day's to respond to me.

Bespectfully Submitted By,
Damien S. Hewlett
Date Of: August 8, 2024

Copies To The Following:
- U.S.D.C - E.D - WI - via - E-file
- A.A. G - Brandon T. Flugaur - via - USPS

| First Interrogatories For Defendant Justin L. Thomsen:

1. On the handheld camera evidence, at approximate time of 1:17 minutes of 29:46 minutes of footage, did the Plaintiff say verbatim "This is Damien Hewlett, I am non-aggressive, I would like to say something to the camera, I am not refusing to do anything?

2. On the handheld video camera evidence, at approximate time of 1:40 minutes of 29:46 minutes of footage, did the Plaintiff say verbatim "I'm being, I'm being non-aggressive, I am agreeing with all directives, I am being non-aggressive, I am being non-violent and I did talk to you previously about this situation and I asked you, hold on, your trying to cut me off as the camera's running, let's get down to the nitty-gritty of the truth of the situation?

3. Did you at any point notify the the Plaintiff, Verbally, that you had your OC/spray out, and would use it on him, If he did not comply with orders?

4. The "first" time you had sprayed the Plaintiff with OC/spray, how many seconds did you give the Plaintiff, to have an opportunity to comply,

before you sprayed him with the oc/spray?

5. On the handheld video camera footage evidence, at approxiamately 3:40 minutes of 29:46 minutes of the handheld evidence, did the Plaintiff say verbatim- I'm trying to have a conversation and you spray me, I can't see, I can't breath, and then went into a caughing fit?

6. At the time point of approximately 4:13 minutes of 29:46 minutes of the handheld video evidence, did the Plaintiff say verbatim-"I was not doing nothing, you just sprayed me, you assaulted me, I was talking to you, I have a freedom of speach?

7. The "second" time you had sprayed the Plaintiff with oc/spray, how many seconds did you give the Plaintiff, to even have an equal opportunity to comply, before you sprayed him with oc/spray.

8. Per the Use of Force policies, of which applied to you on the date of 11-5-2023, are you suppose to notify a PIOC of which type a force you going to use, then give a PIOC equal time to have an opportunity to comply before you use any force?

3

9. Per the use of force policies that governed you on date 11-5-2023, were you suppose to be atleast "three-feet" away from a PIOC when spraying them with the oc/spray?

10. On the handheld video footage evidence, at the approximate timeframe of 6:50 minutes through to 7:40 minutes, did the Plaintiff say verbatim- "help me, help me stand, you guys got all this man power, help me stand, i'm not doing nothing, you standing here, I can't breath, I can't breath, i'm having trouble breathing, help me, help me please, leg hurts, my leg hurts so bad bro, my leg hurts, Before you tased him?

11. Was there an official Use of force investigation into the force that you used on the Plaintiff on the date of November 5, 2023?

12. If your answer was "yes" to interrogatory #11, than what was the out come of the use of force investigation?

13. Were you demoted and transferred out of Waupun Correctional Institution due to your

rule violation's pertaining to your act's involving misconduct in use of force type Situation's at the Prison?

14. Did the official use of force investigation into the force used by you on the Plaintiff on 11-5-2023 yield that excessive force Was used by you on the Plaintiff?

15. Could the suit-up team, alongside you, have breached the cell, after you had administered the "first" blast of OC-spray, while the Plaintiff's dominate right hand was tethered to door, he told you he "Couldn't See", and was cordially talking too you and suit up team?

16. After you had tased the Plaintiff for being in a kneeling position and not standing position, did you have him go back into a kneeling position again to place shackle's on him?

17. Could you have had the suitup team members apply the handcuff's and shackles as the Plaintiff was originally in the kneeling position before tasing him?

5

18. On the handheld video footage evidence, at the approximate time of 10:12 minutes of 29:46 minutes in footage, did you have a verbal exchange with the Plaintiff, where the Plaintiff said verbatim-"ahhh, my eye's, I can't breathe, it burns, it burns, aww, it burns", then you Justin Thomsen respond to the Plaintiff verbatim-"were gonna get you a shower," then the plaintiff says verbatim-"can you get me a tissue, I got puke in my hair too, puke and mace, Shower Please"?

19. Did you allow the Plaintiff to wash the mace and puke off his body and hair with soap as a basic hygienic need after you had said to him "were gonna get you a shower"?

20. On the handheld video footage evidence, at the approximate time frame of 17:33 minutes through to 17:46 minutes of footage, was there an verbal interaction between the Plaintiff and the present staff/defendant's in this case of which ensued as follows: Plaintiff verbatim-"I will comply, I am thouroughly okay with complying, I am, I am full compliance, I am in full compliance, I am in full compliance sir, I'm sorry, I, I just wanted

to have a conversation with you, I did'nt want to go through any of this "sir, I did'nt even say I wanted to go on OBS".?

21. Did you make the decision to do a <u>so-called</u> staff assisted strip search of the Plaintiff where you had a member of the suitup team touching the plaintiff's penis and anus when ya'll had forcibly cut his clothes off him after he had told you and suit up team that he "<u>was willing</u>" to strip out?

22. Why would you tase the Plaintiff in the back for not being in a standing position if you were just going to have him go back to his knees to put shackles on him anyways?

23. Exactly which DAI/DOC policy number stipulates that staff are allowed to do a "<u>so-called</u>" staff assisted strip search where a PIOC's penis is fondled, anus groped, while being forcibly held down on his knees, handcuffed behind the back, shackles on ankles, tethered to a door, after pioc's clothes are <u>forcibly cut off</u> his body, when he's non-aggressive, and said he was

<u>Willing</u> to strip out for D.O.C - Staff?.

24. If you had given an actual DOC/DAI policy number for the response to above listed interrogatory question number -23, than what does the policy you supplied say "<u>verbatim</u>"?

25. Did the Plaintiff tell you and Suitup team more than once that you were breaking the law and violating his rights within the handheld video camera evidence?

<u>Respectfully Submitted By</u>,
Damien Shontell Hewlett
<u>Date Of</u>: August 8, 2024

First Interrogatories For Defendant Brandon Fisher:

1. Were you the acting Restrictive Housing unit Supervisor on the date of 11-5-2023 during the incident involving the Plaintiff of which is the subject of this here lawsuit Sir?

2. Were you a Defendant in the unrelated, prior lawsuit of Hewlett V. Hill - Case # 22-CV-1363?

3. What was the Plaintiff permitted by the courts to proceed forth with suing for in the prior lawsuit of Hewlett V. Hill - Case #22-CV-1363?

4. Was the Case of Hewlett V. Hill- Case #22-CV-1363 settled out of court on the date of September 20, 2023, just "47" days prior to the November 5, 2023 incident of which is the subject of this lawsuit?

5. What was your duties per DOC policy as the acting Restrictive housing unit Supervisor?

6. Were you fired from employment with the Wisconsin Department of corrections?

7. If your answer was "yes" to the forementioned interrogatory #6, then why were you let go from your prior job with the Wisconsin's Department of Corrections?

8. Do you have pending criminal charges for the violations of Wisconsin Statute 940.29 - Abuse of Resident's at Penal Facilities? This is highly relevant for the character evidentiary value of Defendant Fisher.

9. Did you talk to the Plaintiff about the situation of which is the subject of this lawsuit, on the date of November 8, 2023, at the approximate timeframe of 4:15pm to 4:35pm?

10. How many other times have lawsuits been filed against you while you were employed previously at Waupun Correctional Institution?

Respectfully Submitted By,
Damien Shontell Hewlett
Date Of: August 8, 2024

First Interrogatories For Defendant Tanner Leopole:

1. Were you "relieved" of your job as a Department of corrections employee for the state of Wisconsin?

2. What were the "reasons" you were fired from your job with the Wisconsin Department of corrections?

3. Do you have pending criminal charges for the violation of Wisconsin Statute 940.29- Abuse of Residents at Penal Facilities? Highly relevant for character evidence of the Defendant when building defense for trial, for Plaintiff.

4. Did the Plaintiff ask for help to his feet, and complain about his leg hurting, before Defendant - Justin Thomsen tased him?

5. Who had touched the Plaintiff's penis and anus during the staff assisted strip search?

6. Has the Plaintiff ever written any type of complaint against you in the past, prior to the incedent on 11-5-2023?

7. Have you ever had any prior misconduct reports while working for the Department of Corrections.

8. Did the Plaintiff express that he wanted soap to wash the oc/spray off of him due to it still "<u>burning</u>" him more than once.

9. Did you or anyone else present on 11-5-2023 allow the Plaintiff to wash the oc/spray off with soap as a hygienic need as he begged and pleaded for?

10. On date of November 5, 2023, did the Defendant-Justin Thomsen give the Plaintiff a verbal notice that he had the oc spray out and was going to use it on the Plaintiff?

11. From what you could see, did Defendant Thomsen give the Plaintiff <u>any time to</u> react to an order from the moment he said spray to the moment he sprayed Plaintiff with the oc/spray both times?

<u>Respectfully Submitted By,</u>
Damien S. Hewlett
Date of: August 8, 2024