DAMIEN SHONTELL HEWLETT,

        Plaintiff,

       v.                                                     Case No. 24-C-377

JUSTIN L. THOMSEN, et al.,

        Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS

Plaintiff Damien Shontell Hewlett, an inmate at Waupun Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. On August 9, 2024, Defendants filed a motion for partial summary judgment on the ground that Hewlett failed to exhaust the administrative remedies on two of the claims at issue in this case. Dkt. No. 26. For the reasons explained below, the Court will deny Defendants' motion.

## BACKGROUND

Hewlett is proceeding on claims that, on November 5, 2023, Defendant Justin Thomsen allegedly used excessive force when he sprayed Hewlett with OC spray and tased him unnecessarily, that Defendants Thomsen, Tanner Leopold, Bridgett Prosper, Logan Goehl, Ousman Bah, Charles Zuhlke, and Brandon Fisher refused to allow him to use soap to wash OC spray from his face and eyes, and that Thomsen ordered a staff-assisted strip search even though Hewlett was willing to remove his clothes and participate in a standard strip search. Dkt. No. 7. Less than a week after the incident, on November 10, 2023, Hewlett submitted an inmate complaint in which he stated, "The one issue falls under DOC 310.08(1) of PREA complaint Procedure for a lot occurred in the one instance that [led] to the PREA related incident. Remedial Action to be discussed in the future." The inmate complaint described the events at issue in this case, including

stating that, following Hewlett protesting his placement on observation status, Thomsen twice sprayed him with OC spray and staff "did not let [Hewlett] get OC off thoroughly with soap . . . ." After explaining the events leading up to the issue identified in his inmate complaint, Hewlett stated that staff "violated PREA by cutting [his] clothes off [him] in front of Prosper a female staff lady after I told them to have her leave for it violated PREA and I was willing to strip off." Dkt. No. 42 at ¶1; Dkt. No. 39-1 at 9.

A few days later, on November 13, 2023, the institution complaint examiner returned the inmate complaint to Hewlett explaining that, under § DOC 310.07(5), each inmate complaint may contain only one clearly identified issue. The return letter noted that Hewlett's inmate complaint had included multiple issues, including excessive force, Thomsen making a false statement, Hewlett not being allowed to wash off OC spray, and Hewlett having his clothes cut off in the presence of a female staff member. The institution complaint examiner informed Hewlett that, per the administrative code, his complaint must contain only one issue. Hewlett was instructed to resubmit a proper inmate complaint within the fourteen-day time limit. Dkt. No. 39-1 at 10.

Two days later, on November 15, 2023, Hewlett wrote a letter to the institution complaint examiner, explaining that all the issues he included in his original inmate complaint should be considered because those issues led to the alleged PREA issue. Hewlett noted that, given this "domino effect," every issue that arose during the "ongoing scenario" should be considered in a single inmate complaint. Hewlett asked the institution complaint examiner to accept his original inmate complaint for processing. The next day, on November 16, 2023, the institution complaint examiner informed Hewlett that his submission would not be accepted based on his refusal to identify the one issue he wanted addressed. Dkt. No. 42 at ¶¶3, 5-7; Dkt. No. 39-1 at 11-12.

Hewlett again wrote to the institution complaint examiner and noted that he had separated the issues into two inmate complaints. The first inmate complaint identified "a PREA incident" as the one issue and described Thomsen ordering a staff-assisted strip search in the presence of a

2

female staff member even though Hewlett had agreed to voluntarily remove his clothes. The second inmate complaint identified Thomsen's alleged use of excessive force and described Thomsen twice using OC spray and tasing Hewlett even though Hewlett was tethered to the cell door and indicated his willingness to comply with orders. The second inmate complaint was initially returned, but Hewlett resubmitted it a few days later, at which time it was accepted. Both inmate complaints were fully exhausted. Dkt. No. 42 at ¶¶11 ; Dkt. No. 39-1 at 15, 25-26.

Nearly two months after the original incident, on December 20, 2023, Hewlett submitted an inmate complaint asserting that his medical records contained lies about his condition after he was sprayed with OC spray and tased on November 5, 2023. In summarizing the investigation, the institution complaint examiner stated that, on November 5, 2023, Hewlett had complained to the nurse that he was not allowed to properly wash with soap and that the nurse had confirmed at that time that psychological services had not cleared Hewlett to use soap. In the Secretary's decision dismissing the appeal in part, it was noted that Hewlett had been provided two decontamination rinses after he was sprayed with OC spray. The decision also referred the "broader issue . . . to the DAI Administrator for discussion on consistent provision of a cleansing product that is effective following OC exposure." Dkt. No. 39-1 at 38-39.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth

3

specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Failure to exhaust "is an affirmative defense, and the burden of proof is on the defendant." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Wisconsin has established the inmate complaint review system to review inmate grievances regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment. Wis. Admin. Code § DOC 310.06(1). In Wisconsin, an inmate is required to file an inmate complaint "within 14 days after the occurrence giving rise to the complaint." *Id.* § DOC 310.07(2). Each inmate complaint must contain only one clearly identified issue. *Id.* at § DOC 310.07(5). Federal courts "take[ ] a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

Defendants assert that Hewlett failed to exhaust his claim that Fisher failed to intervene to stop the allegedly unnecessary staff-assisted strip search and his claim that Hewlett was denied the use of soap to wash the OC spray from his face and eyes. Initially, Defendants asserted that Fisher was not present during the staff-assisted strip search and therefore could not have intervened, but they later retracted that statement, explaining that they had recently received video footage showing that Fisher was present. Defendants argue that, regardless, Hewlett did not exhaust this

4

claim because he did not complain about Fisher's failure to intervene.  Defendants take too narrow a view of the exhaustion requirement.

The applicable Wisconsin regulations do not require that an inmate complaint identify the perpetrator of an alleged problem or identify the potential legal claim that may later be pursued. *Henry v. Deshler*, No. 20-2185, 2021 WL 2838400, at *2 (7th Cir. July 8, 2021). The inmate complaint need only "provide notice to the prison of the nature of the wrong for which redress is sought." *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020).  The alleged wrong for which Hewlett seeks redress is an unnecessary staff-assisted strip search that was allegedly used to punish and humiliate him.  Hewlett's claim that Fisher should have intervened after Thomsen ordered the search is not a separate issue but is merely another aspect of the same issue.  Defendants concede that Hewlett provided the prison notice of the search in an inmate complaint that was fully exhausted.  They also concede that, in reviewing video footage of the incident, it became clear that Fisher was present during the search.  Accordingly, the prison had "notice of, and an opportunity to correct, [the] problem," *i.e.*, Thomsen ordering the search and Fisher doing nothing after he did so.  *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("Separate complaints about a particular incident are only required if the underlying facts or the complaints are different."); *see Henry*, 2021 WL 2838400 at *2 (noting that it "belies reason to suggest that prison administrators were not aware of" other staff involvement in the incident described in the grievance).  Fisher is therefore not entitled to summary judgment on this claim.

Nor have Defendants shown that Hewlett failed to exhaust the administrative remedies with regard to his claim that he was denied the use of soap after he was sprayed with OC spray.  Nearly two months after the incident at issue, Hewlett complained that he had recently discovered that a nurse had falsely documented his responses to questions on a form.  Hewlett's complaint was that the nurse never asked him many of the questions to which she had marked "yes," but the institution complaint examiner apparently understood Hewlett to be complaining that he did not receive

5

adequate care during the nurse's evaluation. The institution complaint examiner conducted an investigation based on his misunderstanding of Hewlett's complaint and, in the course of doing so, learned that Hewlett had asked for soap to wash off the OC spray and that the nurse had, at that time, confirmed that Hewlett had not yet been cleared to use soap. Dkt. No. 39-1 at 39. Further, in ruling on Hewlett's appeal, the Secretary noted the "broader issue . . . on consistent provision of a cleaning product that is effective following OC exposure" would be referred to the DAI administrator for discussion. The Secretary also ruled that, given the psychological services unit and security concerns, Hewlett receiving two decontamination rinses (without soap) was sufficient. Dkt. No. 39-1 at 44.

As noted, "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley*, 729 F.3d at 651. The Court acknowledges the unconventional circumstances here: It appears that Hewlett did not intend to provide notice regarding the denial of soap to wash off the OC spray, but, regardless of Hewlett's intentions, that is what the institution complaint examiner and Secretary understood the issue to be, and they both addressed that issue on the merits, with the Secretary going so far as to refer the issue for further consideration and decision. Defendants therefore cannot reasonably argue that the prison did not have notice of and an opportunity to correct the problem. And, given that the issue was addressed on the merits, any argument that the inmate complaint should have been rejected on procedural grounds as untimely is waived. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005) ("if prison administrators choose to consider the merits of an untimely grievance, then the claim has been exhausted"). In short, because the purpose of exhaustion has been satisfied, Defendants are not entitled to summary judgment on this claim either. Accordingly, the Court will deny Defendants' motion for summary judgment on exhaustion grounds.

## OTHER MOTIONS

On August 27, 2024, Hewlett filed a motion to compel his institution to provide video footage to lawyers who are considering whether to represent him. On October 9, 2024, the Court ordered Defendants to respond to the motion. A few days later, on October 11, 2024, Defendants responded and explained that defense counsel had not received any request from any law firm to view video evidence as part of a representation determination process. Defense counsel further stated that the Department of Justice has no objection to sharing video evidence with a lawyer considering representation provided the lawyer signs a protective order. Finally, defense counsel asserted that, upon receipt of a request from a prospective lawyer, defense counsel would make the necessary arrangements with the lawyer to sign the protective order and would facilitate sharing the video with the prospective lawyer. The procedures outlined by defense counsel to allow prospective lawyers to view relevant video footage is reasonable, so the Court will deny Hewlett's motion to compel Defendants to produce video to prospective lawyers.

Finally, on October 14, 2024, Defendants filed a motion to stay discovery pending resolution of their motion for partial summary judgment on exhaustion grounds. Because the Court is denying the motion for summary judgment on exhaustion grounds, the Court will deny the motion to stay discovery as moot.

## CONCLUSION

For these reasons, Defendants' motion for partial summary judgment on exhaustion grounds (Dkt. No. 26) is **DENIED**, their motion to stay discovery (Dkt. No. 53) is **DENIED** as moot, and Plaintiff's motion for an order to compel production of video evidence (Dkt. No. 35) is **DENIED**.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of October, 2024.

s/ William C. Griesbach
William C. Griesbach
United States District Judge