UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAMIEN SHONTELL HEWLETT,

        Plaintiff,

    v.                                                                   Case No. 24-C-377

JUSTIN L. THOMSEN et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Damien Hewlett, who is serving a state prison sentence at Waupun Correctional Institution and representing himself, filed this action pursuant to 42 U.S.C. §1983, alleging that his civil rights were violated. Hewlett is proceeding on Eighth Amendment claims against Defendants Justin Thomsen, Ousman Bah, Brandon Fisher, Logan Goehl, Tanner Leopold, Bridgett Prosper, and Charles Zuhlke in connection with his allegations that (1) Thomsen used excessive force against him and unnecessarily ordered a staff-assisted strip search to harass him and (2) all Defendants were deliberately indifferent to the pain he was suffering as a result of being sprayed with OC spray. This matter comes before the Court on Defendants Bah, Fisher, Goehl, Leopold, Prosper, and Zuhlke's motion for summary judgment.[1] Dkt. No. 89. For the reasons explained below, the motion will be granted.

---

[1] On August 8, 2025, the Court granted Defendants' counsel's motion to withdraw as Thomsen's counsel based on Thomsen's failure to cooperate with him. The Court also revoked the Department of Justice's acceptance of service on Thomsen's behalf and ordered the U.S. Marshals Service to personally serve Thomsen with Hewlett's complaint. According to a representative from the U.S. Marshal Service, Thomsen has not been served with the complaint as of the date of this decision.

## BACKGROUND

At the relevant time, Hewlett was an inmate housed at Waupun Correctional Institution, where Defendants worked as corrections staff. On November 5, 2023, Hewlett was to be moved to a cell in the restricted housing unit, which, for safety and security reasons, required that he first be strip searched. According to Lieutenant Thomsen's video-recorded narrative, Hewlett was being transferred to the restrictive housing unit so he could be placed on observation status after he had made statements indicating he was feeling suicidal or homicidal. Lieutenant Thomsen states that he had checked with Dr. Meidema with the Psychiatric Services Unit and was told Hewlett needed to be placed on observation status because he had not recanted his statement. Hewlett was apparently denying he ever said he was suicidal, though it is unclear whether he ever denied stating he was homicidal. Dkt. No. 92-2. In any event, Hewlett was given numerous directives to comply with a strip search. Defendants assert that Hewlett failed to comply, so a suit-up team consisting of Thomsen, Leopold, Bah, Goehl, Zuhlke, and Prosper was gathered in an attempt to gain his compliance. Thomsen supervised the team; Fisher was not a member of the team, nor did he supervise the team. Dkt. Nos. 91, 105 at ¶¶1-9.

Thomsen spoke to Hewlett for several minutes, asking him to comply with orders to be strip searched. Hewlett spoke over Thomsen, asked questions in response to Thomsen's orders, and failed to comply with Thomsen's direct orders. After Hewlett watched Thomsen remove his OC spray from his belt, Thomsen informed Hewlett that he did not want to use force but that he would have to utilize force if Hewlett did not comply with orders. In response, Hewlett asked if Thomsen had used de-escalation tactics as required by policy and whether he had contacted the psychological services unit. Hewlett did not comply with Thomsen's orders. Thomsen asked Hewlett a final time if he was going to comply with a strip search. Hewlett did not answer directly

2

but instead continued to ask questions. Thomsen asserted that he would take that as a no and then raised the OC spray cannister and stated "spray" as he deployed a one-second burst through the cell's wire door onto Hewlett's face. Dkt. Nos. 91, 105 at ¶¶10; Dkt. No. 98 (handheld camera video footage available for viewing in the clerk's office).

In response to being sprayed, Hewlett told Thomsen that he was just asking a question and stated that he could not see. Thomsen instructed Hewlett to comply with the strip search and asked if he was going to comply. Hewlett did not respond directly; instead, he stated that he was trying to talk to Thomsen and have a conversation with him. Hewlett also stated he could not breathe, although he continued to talk freely, asking Thomsen why he would spray him when he had done nothing wrong and was merely trying to talk to him. Thomsen again noted that Hewlett was not complying with orders. Hewlett asserted that Thomsen had assaulted him, at which time Thomsen repeated that he was giving Hewlett a direct order to put his hands behind his back so he could be restrained. Hewlett continued to talk. Thomsen then yelled "spray" and deployed a second burst of OC spray into Hewlett's face. Dkt. No. 98.

In response to being sprayed a second time, Hewlett began to cough and state that he could not see. Hewlett *continued to talk back*, stating that he was not being aggressive and that what Thomsen had done was against the law. Thomsen re-holstered his OC spray and removed his taser from his holster. He informed Hewlett that he had his taser and was going to test arc it; he then deployed it into the air for about five seconds. Hewlett *still* refused to put his hands behind his back as ordered. Instead, he bent down and said he was not doing anything other than standing there. Thomsen again ordered him to place his hands behind his back,[2] but Hewlett failed to do

---

[2] Hewlett's right wrist was tethered via a short strap to the cell door, but he had the freedom of movement to turn his back to the door and place both hands behind him and outside the trap in

3

so, saying his wrist hurt, he could not breathe, and he could not move. He continued to protest that Thomsen had sprayed him for no reason. Thomsen gave additional orders that Hewlett did not comply with. Thomsen stated that Hewlett was still refusing to comply with orders, which Hewlett disputed, asserting that he was not refusing, he just could not see. Thomsen stated that Hewlett could stand up and put his hands behind his back, and Hewlett again stated that he could not see. Dkt. No. 98.

Thomsen, who was also impacted by the OC spray in the air, then opened the door and the team entered the cell, moving Hewlett along the floor as the door swung open. An officer ordered Hewlett to stand up. Hewlett, who was in a half-kneeling position, informed officers he could not stand up because someone was standing on his right foot. The officers appear to readjust their stance and then an officer again ordered Hewlett to stand up. Hewlett told the officers to help him stand and officers appear to pull up on Hewlett's shoulders or torso in response. Thomsen, who was standing to the side and did not have hands on Hewlett, then instructed Hewlett to stand up, but Hewlett slumped sideways to the floor, making no effort to stand. Thomsen informed Hewlett that he has his taser and again instructed him to stand up. Hewlett did not respond but sat on the floor coughing. Thomsen informed Hewlett that they will get him a shower and instructed him to stand up. Officers continued to repeat the order to stand up. Hewlett stated that he is having trouble breathing and that his leg hurt, but he made no apparent effort to stand up. Thomsen then yells, "taser, taser, taser." Hewlett finally stood up, asking why Thomsen would tase him just because he was asking officers to help him stand. Hewlett continued to talk as officers finished restraining him and told Thomsen that his actions constituted excessive force and were

---

the door. Rather than complying with Thomsen's orders to do so, Hewlett continued to face the door and placed only his left hand behind his back.

4

unprofessional and against the law. Hewlett insisted that he had not refused to comply with any directives; he merely had tried to have a conversation. Hewlett was then fully restrained at his wrists and ankles without further incident. Dkt. No. 98.

Hewlett asked for a shower, stating that the OC spray was burning his eyes and that he could not see. Officers, who were holding on to Hewlett's arms, directed Hewlett where to step as they escorted him to a decontamination shower. Hewlett's wrists remained handcuffed due to the officers' security concerns following his failure to comply with directives. At the shower, Hewlett stated that the spray burned his eyes, and he asked for more rinse and more water multiple times. Officers walked him into the shower and let him wet his face with water. After Hewlett was backed out of the shower, Thomsen gently wiped Hewlett's face with a towel multiple times. As officers walked Hewlett to his new cell, he complained that he did not have a chance to thoroughly rinse his face. He had stopped crying out in pain, no longer complained of a burning sensation, and only passively asked for soap. Once they arrived at the cell, Thomsen then again gently wiped Hewlett's face with a towel. Thomsen noted that, since Hewlett had previously refused to comply with orders for a strip search, he would be subjected to a staff-assisted strip search. Hewlett stated that he was sorry and did not want to go through any of this; he just wanted to have a conversation. Hewlett continued to make comments about the officers' conduct, but the staff-assisted strip search proceeded without incident. Fisher was not present during the decontamination shower or the staff-assisted strip search. Dkt. Nos. 91, 105 ¶¶14-19; Dkt. No. 98.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must view the evidence

5

Case 1:24-cv-00377-WCG    Filed 09/16/25    Page 5 of 10    Document 123

and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087-88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Under the Eighth Amendment, correctional officers violate an inmate's constitutional rights "when they use force 'maliciously and sadistically for the very purpose of causing harm,' but not when they apply it in good faith to maintain or restore discipline." *Jackson v. Angus*, 808 F. App'x 378, 382 (7th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). A prison official may also be determined to have violated the Eighth Amendment if he acts with deliberate indifference to an objectively serious condition of confinement. *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016).

In this lawsuit, Hewlett asserts that Thomsen used excessive force against him when he sprayed him twice with OC spray and tased him, that all Defendants were deliberately indifferent to the effect the OC spray had on him when they denied him soap to thoroughly wash his face, that Thomsen again violated the Eighth Amendment when he ordered an intrusive staff-assisted strip-

search simply to harass him, and that Fisher violated the Eighth Amendment when he failed to overrule Thomsen's order for a staff-assisted strip search. The parties offer different versions of what occurred during their interaction, but fortunately the Court has the benefit of a video that leaves no doubt that *all* Defendants are entitled to summary judgment as a matter of law.

With regard to Thomsen, no jury could reasonably conclude that he used excessive force when he used escalating force in the form of OC spray and a taser in an effort to gain Hewlett's compliance with his repeated orders to submit to a strip search. Hewlett asserts that he was never violent and never refused to comply; he merely wanted to have a conversation with Thomsen and wanted Thomsen to answer his questions. But, as the Seventh Circuit long ago observed, "[w]hen an order is given to an inmate there are only so many choices available to the correctional officer. If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force." *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984).

While some may argue that, when possible, officers should leave a non-compliant prisoner alone and wait him out until he is willing to comply, "experience and common sense establish that a prison cannot be operated in such a way." *Id.* "Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* This is because, "[w]hen an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and inmates in danger" and cannot be allowed. *Id.* Further, if prisoners were given discretion as to when or whether to obey a particular order, "[s]ervices to provide food, clothing, health, medical, cleaning, laundry and all other services would come to end" because "[m]ob rule would take over." *Id.* "Someone must exercise authority and control." *Id.*

7

Here, the video, which shows Thomsen patiently and repeatedly trying to gain Hewlett's compliance, eviscerates any factual dispute between the parties' versions of what happened. Hewlett did not obey Thomsen's repeated orders. Instead, he continued to insist that it was unfair that he was being placed in observation status and ignored Thomsen's clear and unequivocal order to cooperate. Hewlett apparently believes that he is entitled to debate correctional officers until and unless they agree with him, as if they have nothing better to do than engage in endless arguments with inmates over whether their orders should be obeyed. But Hewlett's position as a prisoner means that he had only one option: comply with Thomsen's orders. And when Hewlett failed to do that, Thomsen was entitled to use force to gain Hewlett's compliance. Thomsen therefore did not violate the Eighth Amendment when he sprayed Hewlett with OC spray and tased him.

Nor could a jury reasonably conclude that Defendants were deliberately indifferent to the impact of the OC spray on Hewlett. The video shows officers taking Hewlett to the shower and assisting him with rinsing his face. When Hewlett yelled for more rinse or water, they allowed him to place his face back in the water. When Hewlett asked that his face be wiped off, Thomsen gently wiped his face, taking care to wipe the water and residual OC spray from around Hewlett's eyes. After Hewlett calmed down, officers walked him to the cell where he would be strip searched, where Thomsen again gently wiped Hewlett's face and informed him that, after the strip search he would be escorted to a cell that would have a sink with running water so he could wash his face more thoroughly if he so desired. During the staff-assisted strip search, Hewlett coughed occasionally but was not in any obvious discomfort from residual OC spray on his skin. In short, based on the video evidence, it is abundantly clear that *no* Defendant acted with deliberate

8

indifference to the impact of the OC spray on Hewlett, so Defendants are entitled to summary judgment on this claim.

Finally, no jury could reasonably conclude that Thomsen ordered a staff-assisted strip search to harass Hewlett. As Thomsen explained to Hewlett, he had repeatedly failed to comply with orders to submit to a strip search, and he did so while insisting he was not refusing to comply. No jury could conclude that Thomsen acted unreasonably when he refused to believe Hewlett's hollow promises that he was ready to comply with all orders. Hewlett had already wasted a significant amount of the officers' time, and Thomsen acted reasonably when he decided to order a staff-assisted strip search rather than give Hewlett yet another opportunity to passively disobey and waste yet more of the officers' time. As the Supreme Court has acknowledged, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prison staff should therefore be accorded wide-ranging deference in the execution of practices "that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* Based on the video evidence, which shows Hewlett's persistent refusals to comply with orders, no jury could conclude that his constitutional rights were violated when Thomsen ordered a staff-assisted strip search or when, according to Hewlett, Fisher failed to override Thomsen's orders.

Based on the foregoing, Defendants Bah, Fisher, Goehl, Leopold, Prosper, and Zuhlke's motion for summary judgment will be granted and Hewlett's claims against them will be dismissed. Further, pursuant to Fed. R. Civ. P. 56(f), the Court provides Hewlett of its intention to grant summary judgment in favor of Thomsen, even though he has not yet been served with Hewlett's complaint and therefore has not had an opportunity to defend against Hewlett's claims. As noted, the video evidence establishes that Thomsen is entitled to summary judgment as a matter

of law. The Court will allow Hewlett fourteen days to respond to this decision, at which time it will enter summary judgment in Thomsen's favor and will dismiss this case.

Finally, on September 2, 2025, Hewlett filed a motion for default judgment as to Thomsen, which the Court will deny as premature. Thomsen has not yet been served with Hewlett's complaint, and so his answer is not yet due. Thomsen is therefore not in default. *See* Fed. R. Civ. P. 55.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Bah, Fisher, Goehl, Leopold, Prosper, and Zuhlke's motion for summary judgment (Dkt. No. 89) is **GRANTED** and that Hewlett's claims against them are **DISMISSED**. The clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that, pursuant to Fed. R. Civ. P. 56(f), Hewlett is hereby given notice of the Court's intention to grant summary judgment in favor of Thomsen for the reasons explained in this decision. Hewlett may respond to this decision within fourteen days, after which the Court will enter summary judgment for Thomsen, will deny Hewlett's renewed motion to appoint counsel (Dkt. No. 108), and will dismiss this case.

**IT IS FURTHER ORDERED** that Hewlett's motion for default judgment (Dkt. No. 119) is **DENIED as premature**.

Dated at Green Bay, Wisconsin this 16th day of September, 2025.

                              /s/ William C. Griesbach
                              William C. Griesbach
                              United States District Judge